# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1511006774A/B |
| | ) | |
| | ) | |
| KEVIN COLEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 31, 2020
Decided: September 14, 2020

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S AMENDED MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

John S. Taylor, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, DE, counsel for Defendant.

**MAYER,** Commissioner

This 14th day of September, 2020, upon consideration of Defendant's Amended Motion for Postconviction Relief (the "Amended Motion"), I hereby recommend as follows:

## BACKGROUND

On November 11, 2015, the Wilmington police received a call of a disorderly person in front of 901 Spruce Street. Officers responded and found a person fitting the description, later identified as Kevin Coleman ("Defendant"). He was on a bicycle and traveling around the area. When the officer called out to him, Defendant mounted his bicycle and rode away leading to a foot pursuit. Defendant failed to comply with orders to stop, the officer deployed his taser, and with assistance, the officers were able to place Defendant in custody. A patdown revealed that Defendant had a loaded Taurus firearm in his waistband. While in the police vehicle, an officer observed Defendant moving around in the backseat. An officer searched that area and found a drawstring bag with 93 bags of heroin in it.

In April of 2016, a jury trial commenced against Defendant on several counts including Possession of Heroin – Tier 1 with Aggravating Factor ("Aggravated Possession"), Carrying a Concealed Deadly Weapon ("CCDW"), Resisting Arrest, and some minor charges relating to his use of the bicycle. The State's presentation was brief, Defendant did not testify and the defense did not present any evidence. During closing arguments, Trial Counsel *encouraged* the jury to find his client guilty

2

of certain charges. Despite this, the jury sent four notes and found Defendant not guilty of two charges.

After the jury trial concluded, a bench trial began on two remaining charges of Possession of a Firearm by Person Prohibited ("PFBPP") and Possession of Ammunition by Person Prohibited ("PABPP"). Surprisingly, Trial Counsel argued that although the State introduced a certified copy of a record of conviction for Kevin Coleman for Robbery Second Degree, Defendant was not the "Kevin Coleman" identified by the State. The Court ordered additional briefing, and eventually found Defendant guilty of the PFBPP and PABPP charges.[1]

Defendant appealed and on April 5, 2018, the Supreme Court affirmed the conviction and sentence.[2] On June 25, 2019, Defendant filed a Motion for Post-Conviction Relief.[3] The Court appointed post-conviction counsel and Defendant filed an Amended Motion for Postconviction Relief (the "Amended Motion").[4] Defendant argues Trial Counsel was ineffective because he "plead" Defendant guilty to the charges in closing argument. Trial Counsel's closing argument included the following:

---

[1] This trial process is not at issue through the present motion. Defendant recognized in his briefing that the claims would be barred by Superior Court Criminal Rule 61(i)(4) as formerly adjudicated.

[2] *Coleman v. State*, 2018 WL 1673389 (Del. Apr. 5, 2018).

[3] D.I. # 42.

[4] D.I. # 51.

3

> We don't dispute he was fleeing from police officers. So we invite you to find him guilty of resisting arrest...[5]
>
> And while I'm at it, find him guilty of the heroin charge as well. Find him guilty of that, because that ties into the biggest item on the chart, the carrying a concealed deadly weapon charge...
>
> There is no argument that the weapon at issue was a firearm...in fact, had a magazine and ammunition. No question that's a firearm...[6]
>
> Did Mr. Coleman have access to it somewhere on his person? Sure, sure...[7]
>
> There was testimony that when he ran into the car, he fell to the ground. They did a patdown. They found it. Was it concealed?[8]

Through closing arguments, Trial Counsel proceeded to ask the jury to question whether this situation met the definition of concealment, whether Defendant was attempting to hide the firearm from view, whether he was "gripping" something other than a firearm, and to then remind them that possession of a firearm itself may not be illegal, and that it is the State's burden to prove concealment.[9]

---

[5] Trial Transcript April 29, 2016 at pg. 26 (hereinafter "Tr. at ___").

[6] *Id.*

[7] *Id.* at pgs. 26-27.

[8] *Id.* at pg. 27.

[9] *See* Tr. at pgs. 27-30.

There is no dispute that Trial Counsel invited the jury to find his client guilty of at least two of the offenses – the Resisting Arrest and Aggravated Possession charges. It seems the strategy was to prompt the jury to question whether Defendant intended to conceal the gun and whether "absolute visibility" is required by law to convict him of the CCDW charge. The jury was clearly confused by the case and sent four notes. The inquiries included: (1) clarification of the definition of "concealed"; (2) an inappropriate legal analysis; (3) whether Trial Counsel's closing statements were enough to find Defendant guilty of the charges; and (4) an outline of thoughts without posing a true question. Notably, although Trial Counsel suggested that the jury should find Defendant guilty of the Aggravated Possession charge, they did not do so. Rather, the jury found Defendant guilty of CCDW and Resisting Arrest.

After receipt of the Amended Motion, the Court ordered Trial Counsel to submit an Affidavit[10] in response. The State filed a Letter[11] in opposition, and Defendant filed a Letter[12] with a reply. Briefing is now complete. For the reasons set forth below, I recommend that the Court deny the Amended Motion.

---

[10] D.I. # 54.

[11] D.I. # 58.

[12] D.I. # 55.

5

## DISCUSSION

Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the motion.[13] Defendant's conviction became final when the Mandate issued on appeal on April 5, 2018.[14] A motion seeking relief pursuant to Superior Court Criminal Rule 61, must be filed within one (1) year of the conviction having become final, or in this case, one year from when the Mandate was issued.[15] Here, Defendant filed a Motion for Extension of Time to file his motion, and the Court granted that request, re-setting his deadline for June 24, 2019.[16] Defendant's soon-to-be appointed counsel, filed a placeholder motion that was received in chambers on June 21, 2019, but not docketed until June 25, 2019.[17] This Court has the power and discretion to extend deadlines with respect to the briefing process. Therefore, to the extent the Motion was "filed" a day past the Court's deadline, the Court extended that deadline when it issued the Briefing Schedule and the Amended Motion will be considered timely filed.

---

[13] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[14] *See* D.I. # 41, Supreme Court Case No. 590, 2016.

[15] Super. Ct. Crim. R. 61(m)(2) and Super. Ct. Crim. R. 61(i)(1).

[16] Due to clerical error, the Motion for Extension of Time and the Court's Order in response, were only docketed in the "B" Case. *See* D.I. #s 28, 29. The pleadings were later docketed in the "A" Case and can be found at D.I. #s 56, 57.

[17] D.I. # 42.

6

The Court must then review whether there are any other procedural bars to the Amended Motion. Pursuant to Super. Ct. Crim. R. 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred. However, ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[18] The fact that counsel did not raise an argument or objection during the trial, or on appeal, does not bar a defendant from alleging that counsel's failure amounted to ineffective assistance.[19]

The test for assessing an ineffective assistance of counsel claim was set forth in *Strickland v. Washington*.[20] In *Strickland*, the Supreme Court held that in order to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's representation fell below an objective standard of reasonableness **and** the deficiencies in counsel's representation caused the defendant actual prejudice.[21]

---

[18] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[19] *See Malloy v. State*, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011); *Brodie v. State*, 2011 WL 927673, at *1 (Del. Super. Mar. 17, 2011); *State v. Ross*, 2004 WL 2735515, at *2 (Del. Super. Nov. 22, 2004).

[20] 466 U.S. 668, 687-88, 694 (1984).

[21] *Id*; *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

7

When reviewing such a claim, the Court must analyze counsel's conduct based upon all of the facts of the case and avoid peering through the lens of hindsight.[22] Defendant must show that any alleged errors were so serious that his counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.[23] "A defense attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[24] Great weight and deference are given to tactical decisions by the trial attorney and counsel cannot be deemed ineffective for failing to pursue motions that lack merit.[25] Further, in order to prevail on an ineffective assistance of counsel claim, a defendant must show that but for the errors, there is a reasonable probability that the outcome of the proceedings would have been different.[26] In doing so, Defendant must overcome a strong presumption that counsel's conduct was reasonably professional under the circumstances.[27] However, if defense counsel entirely fails to submit the prosecution's case to a meaningful adversarial testing,

---

[22] *State v. Wright*, 653 A.2d 288, 295 (Del. Super. 1994).

[23] *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super. May 23, 2012).

[24] *Id.*, at *4 (holding defense counsel provided active and capable advocacy when evidence against Defendant was overwhelming) (citing *Harrington v. Richter*, 131 S. Ct. 770, 787-792 (2011)).

[25] *State v. Miller*, 2013 WL 871320, at *4 (Del. Super. Feb. 26, 2013).

[26] *Strickland*, 466 U.S. at 687-88, 694; *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[27] *State v. Wright*, 653 A.2d at 293-94 (citations omitted).

then the *Strickland* test will not apply, and the court may find that there has been a denial of the defendant's Sixth Amendment rights that makes the adversary process presumptively unreliable.[28]

Although trial counsel has wide latitude in managing the case, including developing defenses and deciding strategy for calling witnesses, the defendant retains the fundamental right to decide whether to plead guilty or not guilty.[29] If trial counsel disregards his client's choice, the case is not subject to a meaningful adversarial testing, and the structural defect undermines confidence in the proper functioning of the trial process.[30] In *Cooke*, the Supreme Court emphasized that a lawyer must consult with the defendant and obtain his/her consent to the recommended course of action.[31]

Defendant argues that Trial Counsel either overtly plead him guilty to the charges or admitted the necessary elements of the offense and this action deprived him of his fundamental right to plead not guilty. Trial Counsel filed an Affidavit responding to the Amended Motion. In preparation for his defense, Trial Counsel reviewed discovery provided by the State as well as the Affidavit of Probable Cause,

---

[28] *U.S. v. Cronic*, 466 U.S. 648, 659 (1984).

[29] *Cooke v. State*, 977 A.2d 803, 840-841 (Del. 2009).

[30] *Id.* at 841.

[31] *Id.* at 842.

9

Indictment, transcript from the Preliminary Hearing with the Court of Common Pleas, Defendant's criminal history and any pertinent search and seizure case and statutory laws.[32] Trial Counsel filed a Motion to Suppress the detention and search but that motion was denied after a full hearing. With respect to the closing arguments, Trial Counsel's Affidavit provided a detailed explanation of the strategy for defense of the various charges.[33]

In summary, Trial Counsel discussed with Defendant the strengths and weaknesses with respect to each charge, and that it was likely that the jury would convict Defendant of the Resisting Arrest and Aggravated Possession charges. These charges did not carry a minimum/mandatory Level V time. Therefore, Trial Counsel suggested they concede guilt to these charges, and focus on contesting the others. Trial Counsel was particularly concerned with the CCDW charge, because it carried a minimum/mandatory sentence of fifteen (15) years at Level V. However, there was "overwhelming evidence" that Defendant was in possession of a weapon and therefore, Trial Counsel had to create an opportunity for the jury to find him not guilty of this charge by taking the position that there was no evidence as to whether Defendant possessed a concealed carry permit.

---

[32] Aff. at para. 6.

[33] Aff. at para. 15.

According to Trial Counsel, Defendant "was in agreement with the proposed strategy" and given his decision not to testify, they had no other reasonable options for closing.[34] Both Trial Counsel and the State argue that this strategy has been implemented by defense counsel in other cases. In reply, Defendant urges the Court to apply *Cooke/Cronic* and find that regardless of Defendant's possible acquiescence to the employed strategy, since he plead "not guilty," Trial Counsel was prohibited from admitting each element of the CCDW charge and implying guilt.

It appears to the Court that Defendant always maintained complete autonomy over his plea. Trial Counsel consulted with Defendant, and after having been fully informed of the State's case, Defendant consented to the recommended course of action. In *Cooke*, the defendant expressly, and continuously, objected to trial counsel's strategy to plead guilty but mentally ill. The Delaware Supreme Court did not conclude that it was inherently impermissible for trial counsel to admit a client's guilt. Rather, it found that the decision to admit guilt was wholly within the defendant's power. Here, Defendant did not object to the unusual strategy to "split the baby" and admit some offenses with the hope of avoiding the more significant conviction. Therefore, Trial Counsel's actions cannot be said to meet the *Cooke/Cronic* standard and the Court should examine Trial Counsel's strategy by applying the *Strickland* test.

---

[34] Aff. at paras. 16, 32.

11

Delaware courts have repeatedly held that even if a trial strategy is unsuccessful in retrospect, the Court should not determine ineffective assistance of counsel based on the outcome or because hindsight now shows that the risk was greater than the potential benefit.[35] The Court must consider all of the circumstances surrounding the case, and where there is no other available defense, then the Court should defer to trial counsel strategy.[36] Further, if trial counsel's strategy was adopted by defendant, then the Court should not second-guess an informed, and knowing collaboration.[37] To prevail, Defendant must persuade the Court that Trial Counsel's performance was objectively unreasonable, by demonstrating that "no reasonable lawyer would have conducted the defense as his lawyer did."[38] Here, Defendant agreed with Trial Counsel's suggestion of admitting the lesser charges, with the hope of avoiding a conviction for the more severe charge. This strategy is risky, but not unique to this case. Both Trial Counsel and the State acknowledged that this has been attempted in other cases.

---

[35] *State v. Wright*, 653 A.2d 288, 297 (Del. 1994); *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[36] *Id.*

[37] *See State v. Dickinson*, 2017 WL 3573943, at *7 (Del. Super. Aug. 17, 2012).

[38] *Green v. State*, 2020 WL 4745392, at *8 (Del. Aug. 17, 2020), citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987).

Defendant also mischaracterizes the true issue. The concern is not that Trial Counsel plead him guilty against his wishes, but rather, whether Trial Counsel's advice (which he accepted), to admit certain charges to avoid a more serious conviction, was objectively reasonable. The courts have found defense counsel actions "reasonable" when they portrayed their client as a highly successful drug dealer,[39] or stipulated to evidence of a criminal lifestyle,[40] if it aided the agreed upon defense. Therefore, Trial Counsel's advice and strategy, although not entirely successful, was not objectively unreasonable.

Finally, Trial Counsel affirmed that the State's case was overwhelming and there was no alternative defense, nor has Defendant now suggested that a different defense should have been pursued. In fact, after consideration of the entire record, there is no basis to believe the State would not have secured convictions on the charges. Defendant must show that there was a substantial likelihood of a different outcome.[41] Defendant has not proffered any reasonable probability that but for

---

[39] *See State v. Wright*, 653 A.2d 288 (Del. 1994).

[40] *See Norman v. State*, 2013 WL 6710794, at *3 (Del. Super. Dec. 17, 2013). *See also e.g., State v. Johnson*, 2002 WL 130537, at *6 (Del. Super. Jan. 31, 2002) (acknowledging common defense strategy of exposing prior convictions to lessen impact on jury and avoid the State controlling the information); *State v. Morse*, 2016 WL 3044734, at *5 (Del. May 11, 2016) (finding trial counsel's actions were reasonable when there was no defense to one charge and he focused on efforts to avoid conviction to felony offenses).

[41] *Green v. State*, 2020 WL 4745392, at *8, quoting *Starling v. State*, 130 A.3d 316, 325 (Del. 2015).

counsel's actions, the outcome would have been different.[42]  Therefore, in consideration of all of the circumstances surrounding the case, Trial Counsel's strategy was not objectively unreasonable, and Defendant has not established prejudice as a result of counsel's actions.

For all of the foregoing reasons, Defendant's Amended Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

_____
Commissioner Katharine L. Mayer

cc:     Prothonotary
        John S. Taylor, Esquire
        Patrick Collins, Esquire

---

[42] The Court cannot ignore that despite Trial Counsel's concessions during closing argument, the jury found Defendant not guilty of the Aggravated Possession charge relating to the heroin found near his person.